2010 UT App 26

**Thomas G. HICKS III, Plaintiff and Appellee,**

v.

**UBS FINANCIAL SERVICES, INC., Defendant and Appellant.**

No. 20080950–CA.

Court of Appeals of Utah.

Feb. 4, 2010.

Thomas R. Karrenberg and Stephen P. Horvat, Salt Lake City; and Anthony J. Borrelli, Morristown, New Jersey, for Appellant.

Greggory J. Savage and Matthew N. Evans, Salt Lake City, for Appellee.

Before Judges THORNE, BENCH, and GREENWOOD.[1]

## OPINION

GREENWOOD, Senior Judge:

¶1 UBS Financial Services, Inc. (UBS), appeals from the district court's order granting Thomas G. Hicks III's motion to vacate and simultaneously denying UBS's motion to confirm the arbitration award that resolved claims between UBS and Hicks. More specifically, UBS asserts that discovery decisions are particularly and exclusively within the discretion of arbitrators and, accordingly, alleges that the district court incorrectly exercised its authority in vacating the arbitration award based on the district court's disagreement as to the arbitrators' discovery decisions. After briefing was completed, this court sua sponte raised a question about our jurisdiction and at oral argument requested the parties to submit additional briefs on that question. Both parties filed additional briefs, and we have reviewed and considered those briefs in this opinion. For reasons discussed more thoroughly below, we conclude we have jurisdiction and reverse the decision of the district court.

## BACKGROUND [2]

¶2 In September 2000, UBS hired Hicks as a financial advisor in its Salt Lake City, Utah branch office. In connection with this

---

1. Judges Russell W. Bench and Pamela T. Greenwood heard this case as regular members of the Utah Court of Appeals. They both retired from the court on January 1, 2010, before this decision issued. Hence, they are designated herein as Senior Judges. *See* Utah Code Ann. § 78A–3–103(2) (2008); Sup.Ct. R. of Prof'l Practice 11–201(6).

2. Our statement of the facts is derived from the appellate briefs and the district court filings. Hicks did not provide a transcript or other record from the arbitration proceedings to the district court and this court likewise does not have those records.

employment, UBS gave Hicks what he characterizes as a "signing bonus" totaling approximately $1.2 million. This bonus was paid in the form of two Employee Forgivable Loans (the EFLs) which were each memorialized in a promissory note signed by Hicks. The promissory notes provided, among other things, that the EFLs would be forgiven in equal annual installments so long as Hicks remained employed with UBS, and that the EFLs would be completely forgiven after ten years of employment. The promissory notes further required that Hicks immediately repay any unforgiven amounts upon termination, voluntary or involuntary, of his employment. In addition, Hicks signed a Form U–4, wherein he "agree[d] to arbitrate any dispute, claim or controversy that may arise between [himself] and [UBS]." The Form U–4 also provided that any arbitration would be subject to "the rules, constitutions, or by-laws of the [self-regulatory organizations]." Hicks was also provided with the following required disclosure:

> Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

> The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

¶ 3 Approximately six and one-half years later, Hicks resigned from UBS. UBS sent Hicks a letter demanding repayment of the unforgiven amounts secured by the promissory notes—said to be $647,362.56 in principal—and alerting Hicks of UBS's intention to arbitrate this claim should Hicks refuse or fail to comply. UBS then filed a claim with the Financial Industry Regulatory Authority (FINRA)[3] seeking to recover these unforgiven amounts from Hicks. Hicks answered, asserting counterclaims for allegedly unpaid commissions related to his referral to UBS of

two companies, Extra Space Storage and Infinite Energy.[4] Both parties then signed a Uniform Submission Agreement (the Agreement), voluntarily submitting the entire controversy to arbitration subject to FINRA's arbitration rules and regulations, including limited discovery rules. In particular, the FINRA rules and regulations state that "[t]he arbitrators shall determine the materiality and relevance of any evidence proffered and shall not be bound by rules governing the admissibility of evidence." National Ass'n of Sec. Dealers, Code of Arbitration Procedure for Cases Filed Prior to April 16, 2007 [hereinafter Code of Arbitration Procedure], 10323, *available at* http://www.finra.org/ArbitrationMediation/Rules/index.htm (last visited Jan. 21, 2010). The FINRA guidelines also provide that "[t]he effective use of discovery tools such as depositions rests in the careful exercise of judgment by the arbitrators," with the arbitrators ever mindful of the goal "to avoid unnecessary expense or burdens to the parties and to avoid unnecessary delay." Sec. Indus. Conference on Arbitration, The Arbitrator's Manual 12 (2007). The FINRA guidelines further state that, when deciding whether to grant a deposition request, "[i]t is appropriate for arbitrators to consider whether the witness will be able to appear at the arbitration hearing, the necessity of preserving the witness's testimony, and other factors that bear on the efficiency and fairness of the proceeding." *See id.*

¶ 4 FINRA appointed three attorneys to serve as the arbitration panel for this dispute. Both parties agreed to the panel. Both Hicks and UBS submitted various discovery requests to the arbitration panel, many of which were decided in a discovery order entered in March 2007. In that order, the arbitration panel granted Hicks's request to depose David Reynolds, a former UBS employee whom Hicks believed had personal knowledge of potential referral fees to which

---

3. FINRA is supervised by the United States Securities and Exchange Commission and is the largest non-governmental regulator for United States securities firms. It operates a securities dispute regulation forum utilizing arbitrators and is the successor to the National Association of Securities Dealers.

4. In his initial counterclaim, Hicks stated he knew that Extra Space Storage and UBS had completed a deal, but admitted that with respect to Infinite Energy he only "believe[d]" a deal was reached on which he was entitled to a commission, "but lack[ed] sufficient information to make a determination at th[e] time."

Hicks was entitled.[5] In addition, the order denied Hicks's request to depose UBS's custodian of records, and further denied Hicks's request to depose Virginia Weisman, a UBS employee whose responsibilities included "administering referral fee payments to UBS['s] financial advisors who referred investment banking deals to UBS." Despite denying Hicks's request to depose Weisman, the arbitration panel directed Weisman "to appear and give testimony . . . at the evidentiary hearing in this matter, and to produce at the hearing all documents, in her custody or to which she has access, pertaining to the counterclaim for allegedly unpaid commissions due and owing to Hicks."

¶ 5 In a further attempt to allow Hicks to discover information necessary to present his counterclaim, the arbitration panel later granted Hicks permission to serve subpoenas upon both Extra Space Storage and Infinite Energy requesting production of any documents relevant to business deals, if any, between UBS and each company. Sometime in early September 2007, Hicks received a document from Infinite Energy entitled "Term Loan Facility Commitment Letter" (the Infinite Letter), which was signed by two UBS employees and the president of Infinite Energy. In the Infinite Letter, UBS agreed to provide $75 million in financing in order to facilitate Infinite Energy's potential acquisition of another company. Weisman, as instructed by the arbitration panel, submitted an affirmation in October 2007 (the Affirmation) stating, among other things, that she had conducted a physical search and had discovered that "no responsive documents exist with respect to any deal involving UBS and Infinite Energy because no such deal was ever completed."

¶ 6 After nearly eighteen months of extended discovery, the arbitration panel held a three-day evidentiary hearing in early November 2007. Several UBS employees, including Weisman, were ordered to appear either telephonically or in person and, if nec-essary, to give testimony at the hearing. Hicks presented Weisman as a witness in his direct case regarding referral fees and questioned her about the Affirmation. Despite requesting and being granted the presence of other UBS employees at the hearing, Hicks questioned only some of these employees. The arbitration panel was also presented with documents produced during discovery, including several documents produced by UBS relating to deals consummated between it and Extra Space Storage. Other than the Infinite Letter, no evidence was presented at the evidentiary hearing respecting any purported deal consummated between Infinite Energy and UBS.

¶ 7 After hearing the evidence and considering the parties' arguments, the arbitration panel awarded UBS approximately $647,000, representing the unforgiven principal amounts due and owing under the promissory notes securing the EFLs.[6] The arbitration panel also awarded Hicks approximately $161,000 in unpaid referral fees related to deals consummated between UBS and Extra Space Storage, plus accrued and future interest. In an amended order, the arbitration panel further determined that "the amounts that UBS was directed to pay Hicks shall be set-off against the amounts Hicks shall pay to UBS."

¶ 8 Subsequently, Hicks filed a motion in the district court seeking to vacate the arbitration award based on what Hicks contended were erroneous discovery decisions that substantially prejudiced his rights to participate fully in the arbitration. Independently and almost immediately thereafter, UBS filed a motion to confirm the arbitration award, arguing in part that discovery decisions cannot, as a matter of law, provide a district court with grounds to vacate an otherwise legitimate arbitration award. These motions were consolidated and each was fully briefed and argued before the district court.

¶ 9 After noting its limited role in reviewing an arbitration award, the district court

---

5. Hicks's counsel contacted Reynolds by phone, but Hicks ultimately decided not to depose Reynolds. Reynolds later submitted an affidavit, which Hicks did not present at the evidentiary hearing.

6. The arbitration panel further awarded UBS accrued interest and ordered that, until paid in full, "[t]his award shall bear interest at the bank prime rate plus 2%."

disagreed with UBS's assertion that discovery decisions cannot, as a matter of law, properly justify vacation of an arbitration award. Then, in light of the arbitration panel's discovery decisions, the district court stated in its first memorandum decision that "the [arbitration] panel conducted the arbitration hearing in a manner contrary to Utah Code section [78B–11–116],[7] so as to substantially prejudice [Hicks]'s ability to fairly present his case." After some differences arose about the wording of the final order and judgment, the district court entered its Order and Judgment Vacating Arbitration Award and Directing Rehearing, in which it concluded "Hicks was denied critical discovery; denied the opportunity to present material evidence; and denied the opportunity to adequately cross-examine witnesses, all of which substantially prejudiced Hicks'[s] rights during the arbitration proceeding." Thus, the district court vacated the arbitration award and ordered a rehearing to "be conducted in a manner that will not again prejudice Hicks'[s] rights and otherwise comports with Utah Code Ann. § 78B–11–116." To explain its decision and provide guidance for the rehearing, the district court stated the following in its second memorandum decision:

> th[is] Order should be viewed as a direction to the arbitration panel that the rehearing must be conducted in a manner that comports with Utah Code [section 78B–11–116.] Presumably, in ruling on discovery matters going forward, the arbitration panel will be cognizant that the denial of certain discovery led to the vacatur of its first decision and will exercise its discretion to permit the full scope of discovery necessary for [Hicks] to present evidence material to his case. The court is unwilling, however, to go further by articulating the specific discovery which must occur on re-hearing.

UBS appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 We first must determine whether we have jurisdiction to consider this appeal.

"The determination of whether a court has subject matter jurisdiction is a question of law." *Amalgamated Transit Union, Local 382 v. Utah Transit Auth.*, 2004 UT App 310, ¶ 6, 99 P.3d 379 (internal quotation marks omitted).

■ ¶ 11 The sole substantive issue on appeal is whether the trial court's order vacating the arbitration award was proper. "[O]ur 'scope of review is limited to the legal issue of whether the trial court correctly exercised its authority in ... vacating ... [the] arbitration award.'" *Softsolutions, Inc. v. Brigham Young Univ.*, 2000 UT 46, ¶ 12, 1 P.3d 1095 (quoting *Intermountain Power Agency v. Union Pac. R.R. Co.*, 961 P.2d 320, 323 (Utah 1998)). Nevertheless, within this limited scope we review the trial court's legal conclusions for correctness and its factual findings for clear error. *See id.*

## ANALYSIS

### I. This Court Has Jurisdiction to Hear This Appeal.

■ ¶ 12 As stated above, this case involves consolidated motions to confirm and vacate the arbitration award, which motions were denied and granted respectively. The Utah Uniform Arbitration Act (the Arbitration Act) is codified in Utah Code sections 78B–11–101 through –131. *See* Utah Code Ann. §§ 78B–11–101 to –131 (2008). Section 129 of the Arbitration Act is entitled "Appeals" and lists various types of district court decisions from which "[a]n appeal may be taken." *See id.* § 78B–11–129. Pertinent to this appeal, section 129 lists the following dispositions as appropriate for appellate review: "(c) an order confirming or denying confirmation of an award; .... (e) an order vacating an award *without directing a rehearing*; or (f) a final judgment entered pursuant to this chapter." *Id.* § 78B–11–129(1) (emphasis added). Under subsection (c) of section 129, we appear to have jurisdiction because the district court denied UBS's mo-

---

7. The district court referred to the then-current codification of the Utah Uniform Arbitration Act. This act has since been renumbered and recodified. *See* Utah Code Ann. § 78B–11–101 (2008) amendment notes. Because this recodification made no substantive changes to the statutes at issue, we cite to the current version for the reader's convenience.

tion for confirmation of the arbitration award. *See id.* § 78B–11–129(1)(c). On the other hand, subsection (e) of section 129 appears to deny us jurisdiction because the district court vacated the award and directed a rehearing, the opposite of an allowed appeal of an order vacating without ordering a rehearing. *See id.* § 78B–11–129(1)(e). Thus, before reaching the substantive issue of whether vacatur was appropriate in this case we must first determine whether we have jurisdiction to hear this appeal. Whether we have jurisdiction in this context presents an issue of first impression in Utah.

¶ 13 Hicks asserts that we lack jurisdiction. He begins by noting that the Arbitration Act is derived from the Uniform Arbitration Act, which has been adopted in several states. In support of his position, Hicks cites *Karcher Firestopping v. Meadow Valley Contractors, Inc.,* 204 P.3d 1262 (Nev.2009), a recent Nevada Supreme Court case interpreting the same statutory language under identical circumstances—denial of a motion to confirm with simultaneous grant of a motion to vacate with a rehearing. In reaching its conclusion, the *Karcher* court noted that a minority of courts have interpreted similar language as permitting jurisdiction based on the following rationale: (1) the statute expressly provides for jurisdiction over a denial of a motion to confirm, and nothing elsewhere in the statute "explicitly acts to bar" jurisdiction on that basis; (2) denying jurisdiction "could allow the arbitration process to continue indefinitely" while evading appellate review; and (3) denying jurisdiction "renders the second half of subsection (c), which authorizes appeals from orders denying confirmation, almost meaningless." *Id.* at 1265. The *Karcher* court further noted that a majority of courts, when faced with the same or substantially similar statutory language and factual posture, have concluded that they lacked jurisdiction. *See id.* at 1264. The rationale behind this majority view is twofold: (1) allowing appeals from such orders would "render[ ] the 'without directing a rehearing' language of the[ arbitration statute] superfluous," and (2) denying appellate jurisdiction in such a case ensures that "there is a sufficient degree of finality to the arbitration proceedings" before they are reviewed. *Id.*

Finding the majority view more compelling, the *Karcher* court determined that it lacked jurisdiction over the appeal. *See id.* at 1265–66. The *Karcher* court also stated that its arbitration act, "when read as a whole, is designed to permit appeals only from orders that bring an element of finality to the arbitration process." *Id.* at 1266.

¶ 14 UBS, in contrast, endorses the minority position described in *Karcher,* and focuses on the statutory language of the Arbitration Act. UBS contends that we have jurisdiction because this appeal arises from "an order ... denying confirmation of an award," which is an order the statute expressly makes appealable. Utah Code Ann. § 78B–11–129(1)(c). UBS then argues that section 129's use of the disjunctive "or" means that appellate jurisdiction is present "if any one of the six enumerated grounds exist" and that none of the six statutory grounds listed in that section "take precedence" over the others. Thus, UBS continues, both subsection (c) and subsection (e) must be given the fullest effect possible. According to UBS, this can best be achieved by interpreting subsections (c) and (e) independently to determine whether the appeal is appropriate under either subsection, and if so, jurisdiction is proper. UBS asserts that this approach best reflects the purposes of the Arbitration Act—to achieve speedy and cost-effective resolution of a claim—in resolving conflicts, if any, between subsections (c) and (e). Finally, UBS cites this court's decision in *Amalgamated Transit Union, Local 382 v. Utah Transit Authority,* 2004 UT App 310, ¶¶ 11–13, 99 P.3d 379, and argues that, independent of subsections (c) and (e), subsection (f) confers jurisdiction on this court because this appeal was taken from "a final judgment entered pursuant to this chapter," Utah Code Ann. § 78B–11–129(1)(f).

¶ 15 Although we find merit in both Hicks's and UBS's positions, mirroring the majority and minority positions described in *Karcher,* we are bound to follow our decision in *Amalgamated. See State v. Menzies,* 889 P.2d 393, 399 n. 3 (Utah 1994) ("Horizontal stare decisis ... requires that a court of appeals follow its own prior decisions. This doctrine applies with equal force to courts

comprised of multiple panels, requiring each panel to observe the prior decisions of another."). In *Amalgamated*, this court was faced with an appeal from an order granting a motion to compel arbitration. *See* 2004 UT App 310, ¶ 5, 99 P.3d 379. Both parties conceded that the district court's decision was a final order, but the Union nevertheless argued that this court lacked jurisdiction because section 129(a) states that appeals may be taken from a court order "denying a motion to compel arbitration," but is silent as to review of an order granting a motion to compel.[8] *See id.* ¶¶ 9–10.

¶ 16 The *Amalgamated* court disagreed, citing the Utah Constitution for the proposition "that 'there shall be in all cases an appeal of right from the court of original jurisdiction to a court with appellate jurisdiction over the cause.'" *Id.* ¶ 8 (quoting Utah Const. art. VIII, § 5). The court also relied on rule 3 of the Utah Rules of Appellate Procedure, recognizing that "'an appeal may be taken from a district or juvenile court to the appellate court with jurisdiction over the appeal from all final orders and judgments, except as otherwise provided by law.'" *Id.* ¶ 9 (quoting Utah R.App. P. 3(a)). The *Amalgamated* court then determined that "[b]y enacting Utah Code section [78B–11–129], the legislature added to, rather than subtracted from, the situations where an appeal may be filed as a matter of right." *Id.* ¶ 11. The court continued, stating it would be illogical to interpret the "except as otherwise provided by law" language from rule 3(a) "to limit appeals of final orders of the district court, where additional appeals are provided for by statute." *Id.* In addition, the court noted that a 2003 amendment to the Arbitration Act added subsection (f), which allows appeals from "a final judgment entered pursuant to this chapter." *Id.* ¶ 12.

The *Amalgamated* court found support for its position in this amendment, determining that this amendment merely "clarifies what the law has always been, and must therefore be given retroactive application." *Id.* Consequently, the *Amalgamated* court concluded that it had jurisdiction over the appeal because the order appealed from was final, noting that, "[h]aving granted the order compelling arbitration, there [wa]s nothing left for the district court to rule upon." *Id.* ¶ 13.

¶ 17 Although section 129 could be interpreted to limit our jurisdiction in the present case, we conclude that, under *Amalgamated*, it does not. The order appealed from is as final as the order appealed from in *Amalgamated:* By granting Hicks's motion to vacate and denying UBS's motion to confirm, the district court resolved all claims before it and was left with nothing further to rule upon. *See id.* Notwithstanding that degree of finality, there is a potential for district court review after the original arbitration decision in *Amalgamated*, or after the arbitration rehearing ordered in this case.[9] With due respect for the doctrine of horizontal stare decisis, and in light of the constitutional mandate for an appeal as a matter of right "in all cases," *see* Utah Const. art. VIII, § 5, "from all final orders and judgments, except as otherwise provided by law," Utah R.App. P. 3(a), we hold that we have jurisdiction over this appeal.[10]

## II. The District Court Exceeded Its Authority in Vacating the Arbitration Award.

¶ 18 The Arbitration Act "'reflects long-standing public policy favoring speedy and inexpensive methods of adjudicating disputes.'" *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 946 (Utah 1996) (quoting *Allred v. Educators Mut. Ins. Ass'n,*

8. In *Amalgamated Transit Union, Local 382 v. Utah Transit Authority*, 2004 UT App 310, 99 P.3d 379, this court interpreted the statutory precursor to section 78B–11–129. *See id.* ¶ 10. As noted earlier, *see supra* n. 7, we cite to the current version for the reader's convenience.

9. Also, as UBS notes, if we determine we lack jurisdiction at this point, there is no real review possible of the district court's decision vacating the original arbitration award.

10. We note that our decision is further bolstered by the fact that, independent of subsection (e), we unquestionably have jurisdiction under subsection (c)—denial of a motion to confirm—as well as under subsection (f)—any final judgment entered pursuant to the Arbitration Act. *See* Utah Code Ann. § 78B–11–129(1)(c), (f).

909 P.2d 1263, 1265 (Utah 1996)). And "[i]n order to make the proceedings fair, expeditious, and cost-effective," Utah Code Ann. § 78B–11–118(2) (2008), the Arbitration Act confers upon arbitrators broad discretion regarding discovery matters and substantially limits judicial review of arbitration awards. *See generally id.* §§ 78B–11–118, –124; *Buzas Baseball,* 925 P.2d at 947 ("[J]udicial review of arbitration awards should not be pervasive in scope or encourage repetitive adjudications but should be limited to the statutory grounds and procedures for review." (alteration in original) (internal quotation marks omitted)). Accordingly, district courts are statutorily permitted to vacate an arbitration award only if

(a) the award was procured by corruption, fraud, or other undue means;

(b) there was:

(i) evident partiality by an arbitrator appointed as a neutral arbitrator;

(ii) corruption by an arbitrator; or

(iii) misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

(c) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, *or otherwise conducted the hearing contrary to Section 78B–11–116, so as to substantially prejudice the rights of a party to the arbitration proceeding;*

(d) an arbitrator exceeded the arbitrator's authority;

(e) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising an objection under Subsection 78B–11–116(3) not later than the beginning of the arbitration hearing; or

(f) the arbitration was conducted without proper notice of the initiation of an arbitration as required in Section 78B–11–110 so as to substantially prejudice the rights of a party to the arbitration proceeding.

Utah Code Ann. § 78B–11–124(1) (emphasis added).

¶ 19 In applying these statutory provisions, "[t]he trial court may not substitute its judgment for that of the arbitrator, nor may it modify or vacate an award because it disagrees with the arbitrator's assessment." *Softsolutions, Inc. v. Brigham Young Univ.,* 2000 UT 46, ¶ 10, 1 P.3d 1095 (internal quotation marks omitted). Furthermore, the district court's standard of review "is an extremely narrow one, ... setting aside the arbitrator's decision only in certain narrow circumstances." *Id.* (internal quotation marks omitted).

¶ 20 The district court in this case vacated the arbitration award on the ground provided in section 78B–11–124(1)(c), concluding that the panel "conducted the hearing contrary to Section 78B–11–116, so as to substantially prejudice the rights of a party to the arbitration proceeding." *See* Utah Code Ann. § 78B–11–124(1)(c). The district court further determined that, contrary to UBS's assertion, discovery decisions can provide grounds for vacatur if they "substantially prejudice" the right of a party "to be heard, to present evidence material to the controversy, [or] to cross-examine witnesses appearing at the hearing." *See id.* § 78B–11–116(4). The district court then concluded "that the [arbitration] panel made certain discovery decisions which resulted in [Hicks] being denied access to certain key witnesses and information critical to his case." Notably, the district court was concerned that the panel's decisions hindered Hicks's "ability to adequately cross-examine Ms. Weisman, who was clearly a key witness in the arbitration proceeding." Notwithstanding its conviction that a substantially prejudicial mistake had been made, the district court declined to identify specifically which decisions were prejudicially erroneous or how the arbitration panel may avoid that error on rehearing.[11]

---

11. Rather, the district court simply stated:

Presumably, in ruling on discovery matters going forward, the arbitration panel will be cognizant that the denial of certain discovery led to the vacatur of its first decision and will exercise its discretion to permit the full scope of discovery necessary for [Hicks] to present evidence material to his case. The court is unwilling, however, to go further by articulat-

¶ 21 On appeal, UBS argues that the district court incorrectly exercised its authority because it vacated the arbitration award based solely on its judgment that the arbitration panel made erroneous discovery decisions; in particular, the district court disagreed with the arbitration panel's denials of Hicks's requests to depose Weisman and UBS's custodian of records.[12] In support, UBS argues that Utah Code section 78B–11–118, in conjunction with documents executed by Hicks and the FINRA rules, provides that discovery decisions are *exclusively* within the discretion of arbitrators. UBS thus argues that discovery decisions alone cannot provide grounds for vacatur. UBS continues, arguing that even if judicial review of discovery matters is allowed, that the arbitration panel's decisions not to allow Hicks to depose Weisman or UBS's custodian of records did not substantially prejudice Hicks's rights.

¶ 22 Hicks, on the other hand, asserts that the district court correctly balanced its limited scope of review with its need to ensure that the rights of parties to an arbitration are fully respected. Hicks further contends that the district court correctly recognized that the arbitration panel "den[ied] Hicks access to *information* that ... almost certainly would lead to the discovery of *relevant documents*," and that this denial frustrated Hicks's ability to "discover and present *material and decisive evidence* and adequately cross-examine Ms. Weisman with controverting documents." (Emphases added.) Hicks has pointed to no specific evidence that he was prevented from discovering or presenting; thus, his claim for vacatur is based exclusively on the arbitration panel's denial

of his deposition requests.[13] Before deciding whether vacatur was appropriate in this case, we first address UBS's contention that discovery decisions alone cannot, as a matter of law, provide grounds to vacate an arbitration award.

### A. In Limited Circumstances Discovery Decisions Can Provide a Basis for Vacatur.

¶ 23 Arbitrators are endowed with broad statutory discretion to "permit any discovery the arbitrator decides is appropriate in the circumstances," Utah Code Ann. § 78B–11–118(3) (2008), including the discretion to "issue a subpoena" or "permit a deposition," *id.* § 78B–11–118(1), (2). In addition to this statutory authority, Hicks and UBS contractually agreed that "[t]he effective use of discovery tools such as depositions rests in the careful exercise of judgment by the arbitrators," to be exercised with an eye toward, among other things, "whether the witness [sought to be deposed] will be able to appear at the arbitration hearing." Sec. Indus. Conference on Arbitration, The Arbitrator's Manual 12 (2007). Notwithstanding, we acknowledge that this discretion is not unlimited. *See generally* Utah Code Ann. §§ 78B–11–116(4), –124(1)(c).

¶ 24 As stated above, the district court vacated the arbitration award because it concluded that the arbitration panel "conducted the hearing contrary to Section 78B–11–116, so as to substantially prejudice [Hicks's] rights." *See id.* § 78B–11–124(1)(c). Section 78B–11–116 allows an arbitrator to "conduct an arbitration in a manner the arbitrator considers appropriate for a fair and expedi-

ing the specific discovery which must occur on re-hearing.

12. It is unclear if Weisman qualified or would have been designated as UBS's custodian of records. Regardless, the arbitration panel ordered Weisman to appear and testify at the hearing and to "produce at the hearing all documents, in her custody, to which she has access pertaining to" Hicks's counterclaims for unpaid commissions.

13. Hicks also alleges that he was denied requested metadata from a UBS referral fee presentation outlining the referral fee structure applicable to him and allegedly presented to him during his employment with UBS. In attempting to argue that he never received this presentation, Hicks contends that he needed the metadata to

determine whether this referral fee presentation even existed at the time it was allegedly presented to him. Hicks thus argues that denying him the requested metadata substantially prejudiced his ability to present his case. UBS asserts that Hicks never submitted a request to the arbitration panel for production of this metadata. Hicks has provided us with no citation to the record evidencing that he formally requested and was denied this metadata from the arbitration panel. Because we see nothing showing that the arbitration panel actually ruled on such a request, and Hicks does nothing more than insinuate as to UBS's truthfulness regarding the metadata, we do not entertain this argument further.

tious disposition of the proceeding," so long as in doing so the parties' rights are respected. *Id.* § 78B–11–116(1), (4). Specifically, "a party to the arbitration proceeding has a right to be heard, to present evidence material to the controversy, and to cross-examine witnesses appearing at the hearing." *Id.* § 78B–11–116(4). Thus, we conclude that an arbitrator's discovery decisions can provide grounds for vacatur if those decisions prevent a party from exercising statutorily-guaranteed rights to an extent that "substantially prejudice[s]" the complaining party. *See id.* § 78B–11–124(1)(c). At a minimum, a discovery decision must be sufficiently egregious that the district court is able to identify specifically what the injustice is and how the injustice can be remedied. Requiring a district court to specifically identify the substantial prejudice and its relationship to clearly identifiable discovery decisions is further supported by practical concerns, chiefly, the need to provide guidance for the arbitration panel when there is an order of vacatur and rehearing.

**B.   Hicks's Rights Were Not Substantially Prejudiced.**

■ ¶ 25 The theme underpinning Hicks's arguments is that his ability to fairly arbitrate his claims was substantially prejudiced by the fact "that UBS is hiding facts." Citing the Infinite Letter and the Affirmation, Hicks argues that "[c]ommon sense establishes that a company that signs a contract worth around $75 million is likely to have at least some emails, letters, or other written correspondence addressing such a deal, even if the contract or transaction was never 'finalized' as alleged by Ms. Weisman." Hicks then implies that the Affirmation must necessarily be less than truthful because it declares that UBS possesses no documents related to Infinite Energy. However, this argument ignores that Weisman was ordered to produce all "documents relating to *deals UBS made with Infinite Energy* while Hicks was employed by UBS." (Emphasis added.) Consequently, UBS was only required to provide Hicks with those documents relating to consummated deals between UBS and Infinite Energy. Contrary to Hicks's assertion, the existence of the Infinite Letter proves nothing more than that UBS and Infinite Energy engaged in contract negotiations. UBS has never denied such negotiations, stating that "no responsive documents exist with respect to any deal involving UBS and Infinite Energy because no such deal was ever completed." We thus do not agree that the Infinite Letter and the Affirmation indicate that UBS was hiding facts.

¶ 26 In addition, Hicks asserts that he was substantially prejudiced by the arbitration panel's decision not to allow him to depose Weisman and UBS's custodian of records. In particular, Hicks argues that Weisman did not thoroughly search for documents, particularly because she failed to talk to the two UBS employees who signed the Infinite Letter. Hicks ultimately contends that these decisions prevented him from fully presenting material evidence to the arbitration panel and from adequately cross-examining Weisman at the evidentiary hearing. Again, these arguments center around the Infinite Letter and the Affirmation.

¶ 27 We fail to see how the arbitration panel's denials of Hicks's requested depositions prevented him from discovering and presenting material evidence or from "adequately cross-examin[ing] Ms. Weisman." The Infinite Letter and the Affirmation were both produced prior to the evidentiary hearing. In fact, the record is clear that Hicks received the Infinite Letter at least six weeks prior to the evidentiary hearing, and Hicks has failed to claim or identify any indication that he requested further discovery based on the existence of the Infinite Letter. Several UBS corporate employees, including Weisman, were ordered to appear and testify at the evidentiary hearing. Hicks decided against presenting the testimony of several UBS employees. He did, however, present the testimony of others, and in fact, presented Weisman as a witness in his direct case.

¶ 28 Hicks has made no attempt to show how his ability to fully examine Weisman was hindered, insinuating instead that had UBS been truthful, or the arbitration panel been fair, the award would have been significantly different. For reasons unknown to this court, Hicks failed to present this court, or

the district court, with a transcript from the evidentiary hearing, despite the fact that "[a] verbatim record ... of all arbitration hearings shall be kept." Code of Arbitration Procedure, 10326, *available at* http://www. finra.org/ArbitrationMediation/Rules/ index.htm. Much as with an appeal from a trial, our ability to review contentions of error in an arbitration proceeding is greatly hindered by the absence of a complete record, and in a great majority of cases results in our assuming the regularity of the proceedings below. *See, e.g., Bevan v. J.H. Constr. Co.*, 669 P.2d 442, 443 (Utah 1983). The wisdom of such a rule is particularly obvious in a case such as this. Without a record of what occurred at the evidentiary hearing, Hicks would have us assume the level of his participation therein and then speculate to determine if he was entitled to greater participation. That sort of speculation is completely inappropriate for either this court or the trial court to engage in and violates the standard of review assigned to both courts. The Infinite Letter and the Affirmation were presented at the evidentiary hearing and the arbitration panel observed Hicks's examination of Weisman. Hicks had an opportunity to assail Weisman's truthfulness and to question her regarding whether she adequately produced all information possessed by UBS relevant to Hicks's entitlement to referral commissions. Credibility determinations are exclusively within the province of the arbitration panel.

¶ 29 Moreover, Hicks has not identified any specific information he was denied or precluded from presenting, speculating instead that the denial of the requested depositions leads to the inevitable conclusion that he has been denied "access to *information* that ... almost certainly would lead to the discovery of *relevant documents*." (Emphases added.) Such speculation is insufficient to establish substantial prejudice. Hicks also admitted at oral argument that he did not request subpoenas for either of the two UBS officials who signed the Infinite Letter nor any Infinite Energy officials. In addition, we have been provided with no specifics as to the applicable provisions of the UBS referral fee program. Given the broad statutory and contractual discretion afforded to the arbitration panel in this case, and because Hicks has failed to show that his rights were substantially prejudiced by any decisions of the arbitration panel, we hold that the district court erred in vacating the arbitration award solely because it disagreed with discovery decisions made by the arbitration panel. *See, generally, Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 947 (Utah 1996) ("As a general rule, an arbitration award will not be disturbed ... because the court does not agree with the award as long as the proceeding was fair and honest and the substantial rights of the parties were respected." (omission in original) (internal quotation marks omitted)). Furthermore, neither the district court nor Hicks has demonstrated how those discovery decisions resulted in substantial prejudice to Hicks's rights.

## CONCLUSION

¶ 30 We conclude, in light of this court's decision in *Amalgamated Transit Union, Local 382 v. Utah Transit Authority*, 2004 UT App 310, 99 P.3d 379, and other authority, that we have jurisdiction. Accordingly, we determine that section 78B–11–129 of the Utah Code does not prevent us from exercising jurisdiction in this case. We further conclude that although erroneous discovery decisions may conceivably provide adequate grounds for vacatur in limited circumstances, Hicks has failed to show that the arbitration panel's discovery decisions substantially prejudiced his rights to fairly present his case. Thus, we hold that the trial court incorrectly exercised its authority in vacating the arbitration award, and we reverse its grant of Hicks's motion to vacate the arbitration award. We remand to the trial court for proceedings consistent with this opinion.[14]

¶ 31 WE CONCUR: WILLIAM A. THORNE JR., Judge and RUSSELL W. BENCH, Senior Judge.

---

14. "The court shall issue a confirming order unless the award is modified or corrected pursuant to Section 78B–11–121 or 78B–11–125 or is vacated pursuant to Section 78B–11–124." Utah Code Ann. § 78B–11–123 (2008).