IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2011 Session[1]

**MORGAN KEEGAN & COMPANY, INC.**
v.
**WILLIAM HAMILTON SMYTHE, III, INDIVIDUALLY; WILLIAM H. SMYTHE, IV, TRUST U/A/DTD 12/29/87, WILLIAM H. SMYTHE, III, TRUSTEE; AND SMYTHE CHILDREN'S TRUST #2 FBO KATHERINE S. THINNES U/A/DTD 12/29/87**

**An Appeal from the Chancery Court for Shelby County**
**No. CH092353      Walter L. Evans, Chancellor**
_____

**W2010-01339-COA-R3-CV - Filed November 14, 2011**

_____

This appeal involves a trial court's order vacating an arbitration award. The parties engaged in arbitration over a dispute in which the respondent investors asserted that the petitioner investment company mismanaged their funds. The investors prevailed and received a substantial arbitration award against the investment company. The investment company filed a petition in the trial court to vacate the arbitration award, alleging partiality and bias on the part of two members of the arbitration panel. After a hearing, the trial court entered an order vacating the arbitration award and remanding the matter to the regulatory authority for a rehearing before another panel of arbitrators. The respondent investors now appeal. We dismiss the appeal for lack of appellate jurisdiction.

---

[1]On March 24, 2011, this Court issued an Opinion in this case concluding that the appellate court did not have subject matter jurisdiction over the appeal pursuant to the Tennessee Uniform Arbitration Act. On May 6, 2011, Smythe filed a "Motion to File Petition for Rehearing Beyond the Ten Day Deadline in Rule 39(B)." Smythe argued in his petition that this case is governed by the Federal Arbitration Act, under which the trial court's order would be appealable. On May 18, 2011, this Court denied Smythe's late-filed petition for rehearing. However, the Court also withdrew the original decision due to the fundamental importance of ascertaining the Court's subject matter jurisdiction. The parties were then permitted to file supplemental briefs on the issue. We now consider the appeal again, in light of the parties' supplemental briefs.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed for Lack of Jurisdiction**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Christopher S. Campbell and Laura S. Martin, Memphis, Tennessee; Jef Feibelman, David E. Goodman, and Mary C. Hamm, Memphis, Tennessee; and Dale Ledbetter, Fort Lauderdale, Florida, for the Respondent/Appellants, William Hamilton Smythe, III, et al.

John S. Golwen, William G. Whitman, and Annie T. Christoff, Memphis, Tennessee, for the Petitioner/Appellee, Morgan Keegan & Company, Inc.

## OPINION

### FACTS AND PROCEEDINGS BELOW

For a number of years, Respondent/Appellant William Hamilton Smythe, III ("Smythe"), had multiple investment accounts at Petitioner/Appellee Morgan Keegan & Company ("Morgan Keegan") for himself and as trustee for members of his family.[2] In the contracts that Smythe signed when the investment accounts at Morgan Keegan were opened, Smythe agreed to arbitrate any disputes in accordance with the Financial Industry Regulatory Authority ("FINRA") procedures.

Over time, Smythe came to believe that Morgan Keegan had improperly invested his accounts in several funds, specifically with respect to the RMK family of funds ("the Fund") managed by James L. Kelsoe. After sustaining significant losses in the accounts, on April 30, 2008, Smythe, individually and as trustee of the funds at issue (collectively "Smythe"), filed a claim with the FINRA to initiate an arbitration proceeding against Morgan Keegan. In the claim, Smythe alleged that Morgan Keegan had engaged in improper investment activity related to the Fund. On August 4, 2008, Morgan Keegan filed its response to the Smythe claim.

In connection with the arbitration proceedings, pursuant to FINRA rules, Smythe and Morgan Keegan each received a list of potential arbitrators. Both parties were given the opportunity to strike arbitrators from the list. They ranked the remainder and returned to FINRA the ranked list of arbitrators. Both parties' lists included an arbitrator by the name of Eugene R. Katz ("Katz").

---

[2]The underlying facts are not disputed for purposes of this appeal.

-2-

After that, in accordance with FINRA rules, FINRA created a separate combined ranked list of arbitrators from the lists provided by Smythe and Morgan Keegan, deleting arbitrators who had been struck by either party. FINRA then "appointed an arbitration Panel based on the parties' consolidated lists." The panel of arbitrators appointed for the Smythe case included Katz. It also included Marion R. Allen, who later withdrew and was replaced by Michael S. Hill ("Hill"). The final Panel ("Panel") for the Smythe case was comprised of Spencer Buchanan ("Buchanan"), Katz, and Hill. Katz and Hill were also on the panel of arbitrators in unrelated cases against Morgan Keegan arising from the same Fund. Each Panel member submitted an arbitrator disclosure report that was provided to the parties.

After the other Morgan Keegan cases on which Katz and Hill had served as arbitrators were resolved unfavorably to Morgan Keegan, Morgan Keegan objected to Katz and Hill remaining as members of the Smythe Panel. On October 2, 2009, Morgan Keegan filed a motion for the recusal of arbitrator Katz, alleging that he was no longer "independent and neutral" because of, *inter alia*, his involvement in the other arbitration cases against Morgan Keegan and a connection to another claimant against Morgan Keegan arising out of the same Fund. On October 12, 2009, Morgan Keegan filed a motion for the recusal of arbitrator Hill based on his participation as an arbitrator in the other Morgan Keegan case. Arbitrators Katz and Hill both declined to recuse themselves from the Panel.

The matter of the removal of Katz and Hill from the Smythe Panel was then submitted to the Director of Arbitration ("the Director") for consideration under FINRA Rule 12410(a)(1).[3] On October 29, 2009, the Director denied the motions to remove Katz and Hill.

The arbitration hearing on the Smythe claim was conducted from November 2 through November 6, 2009, before the Panel. On November 11, 2009, the Panel issued an award in favor of Smythe, finding that Morgan Keegan was liable to Smythe in the amount of

---

[3]That Rule provides:

> Before the first hearing session begins, the Director may remove an arbitrator for conflict of interest or bias, upon request by a party or on the Director's own initiative.
>> (1) The Director will grant a party's request to remove an arbitrator if it is reasonable to infer, based on information known at the time of the request, that the arbitrator is biased, lacks impartiality, or has a direct or indirect interest in the outcome of the arbitration. The interest or bias must be definite and capable of reasonable determination, rather than remote or speculative. Close questions regarding challenges to an arbitrator by a customer under this rule will be resolved in favor of the customer.

FINRA Code of Arbitration Procedure for Customer Disputes, Rule 12410(a)(1).

$697,000 in compensatory damages, plus prejudgment interest, $20,000 in witness fees, and $195,160 in attorney fees pursuant to Tennessee Code Annotated § 48-2-121.

Unhappy with the Panel's ruling, on November 25, 2009, Morgan Keegan filed the instant Petition and Application of Vacatur in the trial court below, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a), and the Tennessee Uniform Arbitration Act ("TUAA"), Tennessee Code Annotated § 29-5-313(a). These statutes provide that an arbitration award may be vacated upon a showing of "evident partiality" in one or more of the arbitrators who participated in the decision.[4] Morgan Keegan asked the trial court to vacate the arbitration award based on these statutes "because there was evident partiality or corruption in the arbitrators [Katz and Hill] or either of them," and "because the arbitrators were guilty of misbehavior by which the rights of Morgan Keegan have been prejudiced." The petition alleged that arbitrators Katz and Hill were not impartial because, among other things, (1) both had previously sat as arbitrators on cases in which the arbitration panel held against Morgan Keegan, based on the same investments or the same fund manager, (2) Katz had an indirect financial interest in the outcome, and (3) Hill had previously rendered a judgment for punitive damages in a claim related to investments in the same Fund. On this basis, Morgan Keegan requested that the trial court vacate the arbitration award and remand the case to FINRA for a "new arbitration hearing before a neutral and unbiased panel." Smythe filed a response and a memorandum of law in which he objected to the petition of vacatur and requested that the award rendered by FINRA be confirmed.

---

[4]Title 9 U.S.C. § 10(a) provides in pertinent part:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration–
> . . .
>> (2) where there was evident partiality or corruption in the arbitrators, or either of them . . . .

9 U.S.C. § 10(a)(2).

The state-law counterpart, Tennessee Code Annotated § 29-5-313(a), is similar:

> (a) Upon application of a party, the court shall vacate an award where:
> . . .
>> (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party . . . .

Tenn. Code Ann. § 29-5-313(a)(2) (2000).

The parties submitted briefs and exhibits to the trial court. On February 25, 2010, the trial court heard arguments on Morgan Keegan's motion to vacate. At the conclusion of the hearing, the trial court granted Morgan Keegan's motion and remanded the case to FINRA for a new hearing. The trial court stated:

> The Court has reviewed and considered each of the areas of concern that has been raised by the Petitioners in the cause and the Court is of the opinion that a reasonable person under the facts of the case that have been presented would conclude that Mr. Hill and Mr. Katz could not be perceived as being impartial and fair and would be predisposed to view any facts in the light most damaging to the Petitioners because of their previous hearings and conclusions and other matters involving Morgan Keegan.
>
> And the Court is of the opinion that the arbitration award, which may be confirmed on rehearing was nevertheless filled with an air of partiality to the extent that the Court cannot conclude that a reasonable person could reasonably hear and make a fair determination of the facts in the case and that the process was the result of evident partiality on the part of Mr. Hill and Mr. Katz and that the process should be replayed.
>
> So the Court is vacating the arbitrators' award and referring the matter back to FINRA for a new hearing.

On March 16, 2010, the trial court entered an Order Granting Motion for Vacatur and Remanding Case to FINRA for New Hearing. The written order incorporated the trial court's oral ruling and stated specifically that "the Court finds that pursuant to 9 U.S.C. § 10(a)(2) and Tenn. Code Ann. § 29-5-313(a)(2) there was evident partiality by Arbitrator Katz and Arbitrator Hill." Smythe now appeals, challenging the trial court's decision to vacate the arbitration award and remand to FINRA.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Smythe raises the following issues:

1. Whether the evidence presented by Morgan Keegan demonstrated evident partiality of Arbitrator Eugene Katz?

2. Whether the evidence presented by Morgan Keegan demonstrated evident partiality of Arbitrator Michael Hill?

3. Whether the court below erred in finding that a reasonable person would have to conclude that Arbitrators Eugene Katz and Michael Hill were evidently partial to Smythe?

4. Whether the decision of the FINRA Director of Arbitration not to remove Arbitrators Katz and Hill from the Panel was fair to Morgan Keegan?

Morgan Keegan asserts that the issue on appeal is simply whether the trial court, in vacating the arbitration award, correctly found "that a reasonable person would find that two of the three FINRA arbitrators were evidently partial based on the facts and totality of the circumstances."

As a threshold matter, we must consider whether this Court has subject matter jurisdiction to hear this appeal. Under Rule 13(b) of the Tennessee Rules of Appellate Procedure, we are required to determine whether we have subject matter jurisdiction before addressing the merits of the appeal. *See* Tenn. R. App. P. 13(b); *see also State ex rel. Garrison v. Scobey*, No. W2007-02367-COA-R3-JV, 2008 WL 4648359, at *4 (Tenn. Ct. App. Oct. 22, 2008). Subject matter jurisdiction concerns the authority of the Court to hear a matter. Lack of appellate jurisdiction cannot be waived, and the parties cannot consent to the existence of appellate subject matter jurisdiction. *Person v. Kindred Healthcare, Inc.*, No. W2009-01918-COA-R3-CV, 2010 WL 1838014, at *2 (Tenn. Ct. App. May 7, 2010); *Boykin v. Casher (In re Estate of Boykin)*, 295 S.W.3d 632, 635 (Tenn. Ct. App. 2008). Even if the parties do not raise the issue, this Court must consider its own subject matter jurisdiction *sua sponte*. *Ruff v. State*, 978 S.W.2d 95, 98 (Tenn. 1998); *Boykin*, 295 S.W.3d at 635. "Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only." *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990). If this Court does not have subject matter jurisdiction over the appeal, the appeal must be dismissed. *See Boykin*, 295 S.W.3d at 636. The determination of whether subject matter jurisdiction exists is a question of law to be determined *de novo* on the record. *Elite Emergency Servs., LLC v. Stat Solutions, LLC*, No. M2008-02793-COA-R3-CV, 2010 WL 845392, at *5 (Tenn. Ct. App. Mar. 10, 2010).

## ANALYSIS

### Relevant Provisions of the TUAA and the FAA

We first identify the statutory provisions that are relevant to appellate jurisdiction. The TUAA grants statutory authority to this Court to hear appeals from the following arbitration-related orders:

(a) An appeal may be taken from:

        (1) An order denying an application to compel arbitration made under § 29-5-303;

        (2) An order granting an application to stay arbitration made under § 29-5-303(b);

        (3) An order confirming or denying confirmation of an award;

        (4) An order modifying or correcting an award;

        (5) *An order vacating an award without directing a re-hearing*; and

        (6) A judgment or decree entered pursuant to the provisions of this part.

(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

Tenn. Code Ann. § 29-5-319 (2000) (emphasis added).

The federal counterpart to this TUAA provision — 9 U.S.C. § 16 — is similar, but it also includes a list of orders from which an appeal may *not* be taken:

(a) An appeal may be taken from–

        (1) an order–

                (A) refusing a stay of any action under section 3 of this title,

                (B) denying a petition under section 4 of this title to order arbitration to proceed,

                (C) denying an application under section 206 of this title to compel arbitration,

                (D) confirming or denying confirmation of an award or partial award, or

                (E) modifying, correcting, or *vacating an award*;

        (2) an interlocutory order granting, continuing, or modifying an injunction against an arbitration that is subject to this title; or

        (3) a final decision with respect to an arbitration that is subject to this title.

(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order–

        (1) granting a stay of any action under section 3 of this title;

        (2) directing arbitration to proceed under section 4 of this title;

        (3) compelling arbitration under section 206 of this title; or

        (4) refusing to enjoin an arbitration that is subject to this title.

9 U.S.C. § 16 (emphasis added). Thus, pertinent to this appeal, the critical difference between the TUAA and the FAA is that, while the FAA provides that an appeal may be taken from an order "vacating an award," the TUAA permits an appeal only from "[a]n order vacating an award *without directing a re-hearing*." In this case, the trial court vacated the award against Morgan Keegan *and* remanded the case to the FINRA for a new arbitration hearing.

### Summary of Parties' Arguments on Appellate Jurisdiction

Morgan Keegan argues that the trial court's order is not appealable under either the TUAA or the FAA. Initially, Morgan Keegan claims that the FAA is wholly inapplicable because there is no evidence in the record to support a finding that the parties' contracts involve interstate commerce. In the alternative, if the FAA is deemed applicable to the substantive issues in this case, Morgan Keegan argues that the FAA does not apply to the issue of appealability because it is procedural, not substantive, and this Court must apply state law to the procedural issue of whether the trial court's order is appealable. Under the pertinent provision of the TUAA, Section 29-5-319(a)(5), an order vacating an arbitration award *is* appealable if it *does not* direct a rehearing. Morgan Keegan relies on the negative inference from this provision that an order vacating an arbitration award *is not* appealable if it *does* direct a rehearing. Therefore, according to Morgan Keegan, the TUAA is applicable, the trial court's order is not appealable under the TUAA, and this appeal must be dismissed for lack of subject matter jurisdiction.

In response, Smythe argues that the contracts at issue clearly involve interstate commerce, and consequently the FAA is applicable, including its appealability provisions. Smythe asserts that the plain terms of Section 16(a)(1)(E) of the FAA states that a trial court's order "vacating an award" is appealable, regardless of whether a rehearing is directed. He argues that, to the extent that the FAA and the TUAA conflict on this issue, the FAA preempts the TUAA. In the alternative, Smythe argues that, even if the TUAA governs the issue of appealability, the trial court's order is still appealable under state law as well. Subsection (3) of Section 29-5-319(a) of the TUAA permits an appeal from "[a]n order . . . denying confirmation of an award." Smythe claims that the trial court's order was, in effect, a denial of his request for confirmation of the arbitration award, and so the order is appealable under subsection (3). Therefore, Smythe argues, under either the FAA or the TUAA, the trial court's order is appealable, and this Court has jurisdiction over the appeal.

### Applicability of the Federal Act

We begin our analysis by determining whether the FAA is applicable in this case. Section 2 of the FAA provides that "a contract evidencing a transaction involving [interstate]

commerce[5] to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006). "In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration . . . ." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). The FAA applies to all state and federal cases in which the contract at issue requiring arbitration involves or affects interstate commerce. *Id.* at 10-11; *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 83-84 (Tenn. 1999). The United State Supreme Court has explained that the FAA extends to "the full reach" of the Commerce Clause in the United States Constitution:

> We have interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"– words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power. Because the statute provides for the enforcement of arbitration agreements within the full reach of the Commerce Clause, it is perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce" – that is, "within the flow of interstate commerce."
> . . .
> . . . Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce" if in the aggregate the economic activity in question would represent "a general practice . . . subject to federal control." *Mandeville Island Farms, Inc. v. American Crystal Sugar Co.*, 334 U.S. 219, 236, 68 S. Ct. 996, 92 L. Ed. 1328 (1948). Only that general practice need bear on interstate commerce in a substantial way.

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (per curiam) (some internal quotations and citations omitted). When interstate commerce is involved, the substantive provisions of the FAA are to be applied in both federal and state courts. *See Frizzell*, 9 S.W.3d at 84 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 684-85 (1996) (citing *Southland Corp.*, 465 U.S. at 12).

---

[5]The term "commerce," as defined in 9 U.S.C. § 1, essentially means interstate commerce. *See Flanary v. Carl Gregory Dodge of Johnson City, LLC*, No. E2004-00620-COA-R3-CV, 2005 WL 1277850, at *3 (Tenn. Ct. App. May 31, 2005).

Given the broad reach of the FAA and the undisputed facts in the record in this case, there is little doubt that the contracts in this case involve interstate commerce.[6] It is undisputed that the contracts at issue were signed when Smythe opened the investment accounts at Morgan Keegan, and that the contracts included the arbitration provisions relied on in this case. The underlying dispute involves Smythe's claim that Morgan Keegan engaged in improper investments. Numerous courts have concluded that securities transactions clearly involve interstate commerce and that, therefore, the arbitration agreements connected with such transactions are subject to enforcement under the FAA. *See Wattenbarger v. A.G. Edwards & Sons, Inc.*, 246 P.3d 961, 968-69 (Idaho 2010) ("[T]he FAA applies to all substantive issues concerning arbitration because . . . the sale of securities, such as IRAs and annuities, is a transaction in interstate commerce."); *Smith Barney, Inc. v. Henry*, 775 So. 2d 722, 725 (Miss. 2001) ("[W]e easily recognize that the securities industry, on a national level, meets the minimum threshold of affecting or bearing upon interstate commerce, and thus initiates the [FAA]."); *Park v. Merrill Lynch, Pierce, Fenner & Smith*, 582 S.E.2d 375, 378 (N.C. Ct. App. 2003) ("Securities brokerage agreements are contracts 'involving' interstate commerce, and therefore, the FAA applies to them."); *see also Cortina v. Citigroup Global Mkts., Inc.*, Civil No. 10cv2423–L(RBB), 2011 WL 3654496, at *1 (S.D. Cal. Aug. 19, 2011) (observing that "[t]here is no question the financial industry bears on interstate commerce in a substantial way"); *Rodriguez-Bird v. Santander Sec. Corp.*, Civil No. 09–2238 (JAF), 2010 WL 2541708, at *2 n.2 (D. Puerto Rico June 17, 2010) (noting that the FAA applies to a contract to open a securities trading account because it "clearly implicates interstate commerce"); *Prudential Sec., Inc. v. Hornsby*, 865 F. Supp. 447, 449 (N.D. Ill. 1994) (stating that "[i]t is axiomatic that the purchase and sale of securities relates to interstate commerce").

Moreover, though Morgan Keegan now disputes that the contract involves interstate commerce, its first appellate brief filed in this cause stated that the FAA applied in this case "because this matter involves an arbitration proceeding in which the underlying transactions involved interstate commerce," and because "[s]ecurities transactions involve interstate commerce." *See* Appellate Brief of Morgan Keegan at p. 15 n.20 (filed Oct. 14, 2010). Thus, the record is sufficient for us to conclude that the contracts at issue involve interstate commerce, and that the FAA applies to the enforcement of the arbitration agreements in this case.

---

[6]In the supplemental briefs filed in this cause, Smythe cites to copies of "[t]he current Morgan Keegan contracts" that are posted on Morgan Keegan's website to support his claim that those contracts "recognize the applicability of the FAA." As these contracts are not included in the appellate record, we did not consider them; rather, we rely on other undisputed facts in the record to find that the contracts at issue in this appeal involve interstate commerce.

Having determined that the FAA applies overall to these contracts, the issue becomes whether the FAA (Section 16) or the TUAA (Section 29-5-319) governs whether the trial court's order is appealable. Of course, if the application of either the federal statute or the state statute would lead to the same result, we need not address whether federal law or state law controls appealability. Therefore, we examine next whether the trial court's order vacating the arbitration award and directing a rehearing is appealable under either the TUAA or the FAA.

## Appealability Under the Tennessee Act

As noted above, Smythe argues that this Court has jurisdiction over this appeal pursuant to subsection (3) of Section 29-5-319(a) of the TUAA. Morgan Keegan counters that the negative inference from subsection (5) of Section 29-5-319(a) of the TUAA indicates that the trial court's order, vacating the arbitration award *and* directing a rehearing, is *not* appealable.

The parties have not cited, nor have we found, any Tennessee caselaw addressing whether a trial court's order vacating an arbitration award and directing a rehearing is appealable pursuant to Section 29-5-319(a). The issue, then, is one of first impression. When presented with an issue of first impression, particularly one that involves the interpretation of a uniform act, it is useful to review decisions in other states. *See Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005). Decisions from states that, like Tennessee, have adopted the Uniform Arbitration Act, are persuasive because the TUAA specifically states that it "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." T.C.A. § 29-5-320 (2000).

### *Subsection (3) of Tennessee Code Annotated § 29-5-319(a)*

To support the argument that this Court has jurisdiction to hear this appeal under subsection (3) of Section 29-5-319(a) of the TUAA, Smythe relies on the reasoning employed by the Utah appellate court in *Hicks v. UBS Financial Services, Inc.*, 226 P.3d 762 (Utah Ct. App. 2010). In *Hicks*, one party filed a motion with the trial court to confirm the arbitration award, and the other party filed a motion to vacate the award. These motions were consolidated and considered together by the trial court. After a hearing, the trial court entered a single order in which it denied the motion to confirm the award, granted the motion to vacate the award, and ordered a rehearing. *Hicks*, 226 P.3d at 766. An appeal was filed by the party whose motion to confirm was denied. On appeal, the Utah appellate court first addressed whether it had jurisdiction to hear the appeal, considering the same provisions in the Uniform Arbitration Act at issue in the instant case. The *Hicks* court noted that subsection (3) granted the appellate court authority to adjudicate the denial of the motion to

confirm, but that subsection (5) appeared to bar appellate jurisdiction over the trial court's decision to vacate and direct a new hearing, "the opposite of an allowed appeal of an order vacating without ordering a rehearing." *Id.* at 766-67.

Reviewing decisions under the Uniform Arbitration Act from other jurisdictions, the *Hicks* court noted a split of authority as to whether an appellate court has jurisdiction over the appeal of an order addressing both a motion to confirm and a motion to vacate. Ultimately, considering Utah precedent and the Utah constitution, the *Hicks* court concluded that it was bound by *stare decisis* to adopt the minority position, namely, that it had jurisdiction to consider the appeal. *Id.* at 767-68 (citing *Amalgamated Transit Union, Local 382 v. Utah Transit Auth.*, 99 P.3d 379 (Utah App. 2004), and Utah Const. art. VIII, § 5). The *Hicks* court noted the Utah constitution mandated an appeal as a matter of right "in all cases" from all final orders and judgments. It reasoned that the trial court's decision was a final judgment because, "[b]y granting Hicks's motion to vacate and denying UBS's motion to confirm, the district court resolved all claims before it and was left with nothing further to rule upon." *Id.* at 768. Therefore, the *Hicks* court held that it had jurisdiction over the appeal.

As noted in *Hicks*, a minority of jurisdictions have determined that, when a trial court denies confirmation of an arbitration award, vacates the arbitration award, and orders a rehearing, the order is final and appealable under Uniform Arbitration Act provisions identical to Section 29-5-319(a)(3). *See Karcher Firestopping v. Meadow Valley Contractors, Inc.*, 204 P.3d 1262, 1264-66 (Nev. 2009) (surveying other states' positions on the issue); *see also Nat'l Ave. Bldg. Co. v. Stewart*, 910 S.W.2d 334, 341 (Mo. Ct. App. 1995) (accepting jurisdiction over the appeal when the trial court's order both denied a motion to confirm the arbitration award and vacated the trial court's decision and remanded the case for further proceedings); *Air Shield Remodelers, Inc. v. Biggs*, 969 S.W.2d 315, 317 (Mo. Ct. App. 1998) (same). In line with these cases, Smythe urges this Court to find authority under subsection (3) of Section 29-5-319(a) of the TUAA to hear this appeal.

In the case at bar, the record on appeal reflects that the only request made by Smythe to confirm the arbitration award was included in his response and memorandum in opposition to Morgan Keegan's petition for vacatur. Unlike the appellant in *Hicks*, Smythe did not file a motion to confirm the Panel's arbitration award. Moreover, the order of the trial court below does not include an express denial of a request for confirmation of the award; the order states only that the arbitration award "is vacated . . . and the case is remanded to FINRA for a new hearing." Under these circumstances, we cannot find that the trial court's order is in effect an order "denying confirmation of an [arbitration] award." T.C.A. § 29-5-319(a)(3); *see Person v. Kindred Healthcare, Inc.*, No. W2009-01918-COA-R3-CV, 2010 WL 1838014, at *4 (Tenn. Ct. App. May 7, 2010) (holding that, where the appellant filed a motion to dismiss based on an arbitration agreement, but no party filed a motion to compel

arbitration, the trial court's denial of the motion to dismiss cannot be deemed to be an order "denying an application to compel arbitration" under Section 29-5-319(a)(1)). Therefore, we find that the caselaw cited by Smythe is inapplicable to the facts in this case.[7] Finding no other authority indicating that subsection (3) applies, we must conclude that this Court was not granted jurisdiction to hear this appeal pursuant to Section 29-5-319(a)(3) of the TUAA.

### *Subsection (5) of Tennessee Code Annotated § 29-5-319(a)*

Morgan Keegan relies on subsection (5) of Section 29-5-319(a) of the TUAA in arguing that this Court is not authorized to exercise jurisdiction over an appeal from a trial court's order that both vacates an arbitration award *and* directs a rehearing. In support of its position, Morgan Keegan cites, *inter alia*, the Missouri case of ***Crack Team USA, Inc. v. American Arbitration Association***, 128 S.W.3d 580 (Mo. Ct. App. 2004). In ***Crack Team***, involving a lower court order similar to the order in the instant case, the Missouri Court of Appeals interpreted the Missouri counterpart to Section 29-5-319, identical in all pertinent respects. Like Tennessee's statute, the Missouri statute authorizes appeals from "[a]n order vacating an [arbitration] award without directing a rehearing." ***Crack Team***, 128 S.W.3d at 581 (quoting V.A.M.S. § 435.440.1(5)).

The Missouri appellate court in ***Crack Team*** held that an appeal from an order vacating an arbitration award and directing a rehearing was not authorized under the plain language of the Missouri statute. The court reasoned that, "[b]y providing for an appeal only from an order vacating an award without directing a rehearing, Section 435.440.1(5) implicitly bars appeals from orders that direct a rehearing." ***Id.*** at 583 (citing ***Maine Dep't of Transp. v. Maine State Employees Ass'n***, 581 A.2d 813, 815 (Me. 1990)). To hold otherwise, the court stated, "would render the language 'without directing a rehearing' without effect, mere surplusage. Such a construction would be inconsistent with the rules of statutory interpretation." ***Id.*** (citation omitted). The ***Crack Team*** court observed that this construction of the statute was consistent with decisions in several other jurisdictions interpreting the same provision of the Uniform Arbitration Act. ***Id.*** (citing ***Connerton, Ray & Simon v. Simon***, 791 A.2d 86 (D.C. 2002); ***Carner v. Freedman***, 175 So. 2d 70 (Fla. Dist. Ct. App. 1965); ***Maine Dept. of Transp.***, 581 A.2d at 815; ***Kowler Assocs. v. Ross***, 544 N.W.2d 800 (Minn. Ct. App. 1996); ***Neb. Dept. of Health & Hum. Serv's v. Struss***, 623 N.W.2d 308 (Neb. 2001); ***Stolhandske v. Stern***, 14 S.W.3d 810 (Tex. Ct. App. 2000); ***Prudential Secs., Inc. v. Vondergoltz***, 14 S.W.3d 329 (Tex. Ct. App. 2000)); ***see also Boyce v. St. Paul Prop. & Liab. Ins. Co.***, 618 A.2d 962, 969 n.4 (Pa. Super. Ct. 1992).

---

[7]We do not address the issue of whether Tennessee would adopt the majority or minority view under the facts presented in ***Hicks v. UBS Financial Services, Inc.***, 226 P.3d 762 (Utah Ct. App. 2010).

Considering these authorities, we must construe the Tennessee statute. In interpreting the statute, we apply "well-defined precepts" of statutory interpretation:

> Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). Our obligation is simply to enforce the written language. *Abels ex rel. Hunt v. Genie Indus., Inc.*, 202 S.W.3d 99, 102 (Tenn. 2006). When a statute is ambiguous, however, we may refer to the broader statutory scheme, the history of the legislation, or other sources to discern its meaning. *Colonial Pipeline*[*v. Morgan*], 263 S.W.3d [827,] 836 [(Tenn. 2008)]. Courts must presume that a legislative body was aware of its prior enactments and knew the state of the law at the time it passed the legislation. *Owens v. State*, 908 S.W.2d 923, 926 (Tenn.1995).

*Estate of French v. Stratford House*, 333 S.W.3d 546, 554 (Tenn. 2011).

From our review of the language in the Tennessee statute and the caselaw from other jurisdictions, we are persuaded that subsection (5) of Section 29-5-319(a) of the TUAA must be construed as in *Crack Team* and the majority of courts that have considered the issue.[8] In our view, the language in the TUAA is plain and unambiguous. We agree with the reasoning in *Crack Team* that, by including the phrase "without directing a rehearing" in subsection (5) to modify "[a]n order vacating an award," the legislature indicated its intent to exclude from the list of appealable orders an order that vacates an award *and* directs a rehearing.

This interpretation of Section 29-5-319(a)(5) is consistent with the reasons for the well-established rule that a trial court's decision to grant a new trial is not a final, appealable order, as explained in a recent decision by this Court:

> It is well-settled that an "order granting a new trial is not a final judgment and is not appealable as of right." *Evans v. Wilson*, 776 S.W.2d 939, 941 (Tenn.

---

[8]Neither party has cited a case that has interpreted the pertinent provision of the Uniform Arbitration Act differently, nor have we found one.

1989) (citing *Panzer v. King*, 743 S.W.2d 612, 616 (Tenn. 1988)).  *See also Davis v. Flynn*, No. E1999-00421-COA-R3-CV, 2000 WL 807613, at \*1 (Tenn. Ct. App. June 21, 2000).  This is because an order granting a new trial does not end the litigation; rather, it "ensure[s] that further proceedings [will] follow." *State v. Miller*, No. 02C01-9708-CC-00300, 1998 WL 902592, at \*3 (Tenn. Crim. App. Dec. 29, 1998); *see Blackburn v. CSX Transp., Inc.*, No. M2006-01352-COA-R10-CV, 2008 WL 2278497, at \*4 (Tenn. Ct. App. May 30, 2008) (recognizing that "an order granting a new trial is not a final order" and that it is "interlocutory").  This is implicitly recognized in Rule 4 of the Tennessee Rules of Appellate Procedure, insofar as Rule 4 provides that the thirty-day time limitation for filing an appeal runs from the date of an "order denying a new trial or granting or denying any other such [post-judgment] motion." Tenn. R. App. P. 4(b) (emphasis added); *see also Turner v. Jordan*, 957 S.W.2d 815, 817 (Tenn. 1997) (noting that an appeal from a grant of a new trial must be by permissive interlocutory appeal).

*See Cooper v. Tabb*, 347 S.W.3d 207, 218 (Tenn. Ct. App. 2010) (footnote omitted).  Thus, although the *denial* of a motion for a new trial is final and appealable, an order *granting* a new trial is not, because such an order essentially ensures that the legal proceedings will continue.  In the same way, if the trial court directs a rehearing of an arbitration claim, the order ensures that the arbitration proceedings will continue.  *See Kowler Assocs.*, 544 N.W.2d at 802 (stating that, when the trial court vacates an arbitration award and directs a rehearing, "appellate review is premature because the arbitration process has not been completed").  For all of these reasons, we conclude that an order vacating an arbitration award and directing a rehearing is not appealable under the TUAA.

## Appealability Under the Federal Act

Title 9 U.S.C. § 16(a)(1)(E) of the FAA permits appeals from any order "vacating an award," but does not include the proviso "without directing a rehearing."  Smythe cites numerous federal cases finding that, when a district court enters an order vacating an arbitration award and remanding for further arbitration proceedings, the order is appealable under Section 16(a)(1)(E) of the FAA.  *See HCC Aviation Group, Inc. v. Employer Reinsurance Corp.*, 243 Fed. Appx. 838, 842 n.5 (5th Cir. 2007); *Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328 (1st Cir. 2000); *Jay Foods, L.L.C. v. Chem. & Allied Prod. Workers Union*, 208 F.3d 610, 612-13 (7th Cir. 2000); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 913-14 (3d Cir. 1994).  One court summarized as follows:  "The FAA does not distinguish between orders vacating arbitration awards without directing a rehearing and those orders which vacate awards and direct a rehearing of the arbitration dispute; both are appealable." *Atlantic Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276, 1280 (5th Cir.

1994), *overruling on other grounds recognized by **Action Indus., Inc. v. U.S. Fid. & Guar. Co.***, 358 F.3d 337, 341 n.10 (5th Cir. 2004).  Another federal appellate court observed: "Courts of appeals routinely assume, though without discussion, that an order vacating an arbitrator's decision but remanding for additional arbitration is appealable under § 16(a)(1)(E), rather than non-appealable under § 16(b)."  ***Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan***, 195 F.3d 975, 980 (7th Cir. 1999).

Morgan Keegan has cited no authority to support a contrary interpretation of Section 16(a)(1)(E) of the FAA.[9]  In light of the overwhelming weight of authority, we are persuaded that an order vacating an arbitration award and remanding for a rehearing is appealable under the FAA.

### Choice of Law

Thus, we have determined that the order of the trial court in this case is not appealable under the TUAA, but is appealable under the FAA.  This conclusion compels us to consider whether the appealability provisions of the TUAA or the FAA are applicable in a Tennessee court under the facts of this case.[10]  This raises questions of preemption and whether the issue of appealability is procedural or substantive.

---

[9]We note that some confusion may have existed with respect to appealability issues under the FAA before 1988; however, many such issues were resolved with the 1988 amendment to the FAA and the addition of Section 16.  ***See, e.g., Ottley v. Schwartzberg***, 819 F.2d 373, 375-76 (2d Cir. 1987); ***Shearson Loeb Rhoades, Inc. v. Much***, 754 F.2d 773, 775-76 (7th Cir. 1985); ***but see Pearlman***, 195 F.3d at 979-80 (noting that the 1988 amendment "changed the rules for appeals from decisions concerning arbitration"); ***Jack Ingram Motors, Inc. v. Ward***, 768 So. 2d 362, 365 (Ala. 1999) (opining that Section 16 was enacted in 1988 in response to a Supreme Court case holding that orders compelling or denying arbitration were not appealable). Since then, it appears that Section 16(a)(1)(E)  has uniformly (or "routinely" without discussion) been interpreted to provide that a trial court's order vacating an arbitration award and remanding for a rehearing is appealable. Some courts qualify this rule, adding that such orders are appealable only if the trial court remanded the case for a new arbitration, and that the order would not be appealable if the remand were made only for purposes of obtaining clarification from the arbitration panel. ***See, e.g., Virgin Islands Hous. Auth.***, 27 F.3d 911, 913-14.  Because the trial court in the instant case remanded for an entirely new arbitration proceeding, its order would have been appealable even under this interpretation of Section 16.

[10]For a thorough discussion of the interplay between federal law and state law on the arbitration of claims under the federal Securities Act of 1934 and the enforceability of an agreement to arbitrate, *see* Anna M. Vescovo, *Securities Law – The States' Role in Arbitration Legislation: Does It Exist?*, 21 Univ. Mem. L. Rev. 79 (Fall 1990).

The decision of the United States Supreme Court in ***Volt Information Sciences, Inc. v. Board of Trustees***, 489 U.S. 468 (1988), while not determinative on the issue before us, is nevertheless instructive and provides necessary background for our analysis. In ***Volt***, the parties entered into a construction contract that included an arbitration clause. The contract also specified that the entire agreement, including the arbitration clause, would be governed by California law.[11] ***See Volt***, 489 U.S. at 474-76. After the plaintiff sued the defendant in California state court, the defendant filed a motion to compel arbitration. The trial court denied the motion to compel and stayed the arbitration pending the outcome of collateral litigation pursuant to California Civil Procedure Code Annotated § 1281.2(c). This type of stay, while authorized under California law, was not authorized by the FAA, 9 U.S.C. §§ 3 and 4.[12]

On appeal, the plaintiff in ***Volt*** argued that the trial court had erred in applying state law to order the stay, because the contract was governed by the FAA, and the procedures set forth in the FAA preempted the state law to the contrary. In response, the defendant claimed that

_____

[11]The question of whether the choice-of-law provision applied to the arbitration agreement was disputed, but the debate surrounding that issue is not relevant here.

[12]Section 3 provides in part:

> If any suit or proceeding be *brought in any of the courts of the United States* upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3 (emphasis added).

Section 4 provides in part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any *United States district court* which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the *Federal Rules of Civil Procedure. . . .*

9 U.S.C. § 4 (emphasis added).

Sections 3 and 4 of the FAA were not applicable in state court, because they were procedural rules applicable only in federal court and, consequently, could not preempt the California statute. *Id.* at 476-77.

In considering the parties' arguments, the *Volt* Court first recognized that California law, not the FAA, governed the case because the parties had agreed to the application of California law in their contract. *Id.* at 477. In light of this conclusion, the *Volt* Court did not address the defendant's argument that the procedural provisions of the FAA did not apply in state court, though it commented in *dicta* that "the argument is not without some merit." *Id.* In a footnote, the Court explained its comment:

> While we have held that the FAA's "substantive" provisions — §§ 1 and 2 — are applicable in state as well as federal court, *see Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S. Ct. 852, 859, 79 L. Ed.2d 1 (1984), we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court, see 9 U.S.C. § 3 (referring to proceedings "brought in any of the courts of the United States"); § 4 (referring to "any United States district court"), are nonetheless applicable in state court. *See Southland Corp. v. Keating*, *supra*, at 16, n. 10, 104 S. Ct., at 861 n. 10 (expressly reserving the question whether "§§ 3 and 4 of the Arbitration Act apply to proceedings in state courts"); *see also id.*, at 29, 104 S. Ct., at 867 (O'CONNOR, J., dissenting) (§§ 3 and 4 of the FAA apply only in federal court).

*Id.* at 477 n.6.

Given that the parties' contract provided that California law would govern the dispute, the *Volt* Court addressed whether the FAA preempted California law. In discussing this issue, the Court recognized that, in enacting the FAA, Congress did not intend to preempt the entire field of arbitration. "The FAA contains no express preemptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Id.* at 477. The Court observed: "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."[13] *Id.* at 476. It explained, however, that even when Congress has not preempted an entire area of the law, "state law may nonetheless be preempted to the extent that it actually conflicts with federal law — that is, to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and

---

[13]This observation was made in the course of reaching the conclusion that the intermediate appellate court did not err in interpreting the contractual choice-of-law provision to mean that the parties intended for California rules of arbitration to apply to their arbitration agreement. *See Volt*, 489 U.S. at 476.

objectives of Congress.'" ***Id.*** at 477 (quoting ***Hines v. Davidowitz***, 312 U.S. 52, 67 (1941)). Therefore, the question became whether California's arbitration rule permitting the stay "would undermine the goals and policies of the FAA." ***Id.*** at 477-78.

To make this determination, the ***Volt*** Court capsuled the purpose and objectives of the FAA, stating that "[t]he FAA was designed 'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate,' " and "to place such agreements 'upon the same footing as other contracts.' " ***Id.*** at 478 (quoting ***Dean Witter Reynolds, Inc. v. Byrd***, 470 U.S. 213, 219-20 (1985); ***Scherk v. Alberto-Culver Co.***, 417 U.S. 506, 511 (1974) (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924))). The Court observed: "While Congress was no doubt aware that the Act would encourage the expeditious resolution of disputes, its passage 'was motivated, first and foremost, by a congressional desire to enforce agreements into which parties had entered.'" ***Id.*** (quoting ***Byrd***, 470 U.S. at 220). This Congressional purpose, the Court commented, was recognized in the Court's prior decisions holding that the FAA preempts state laws that require a judicial forum for claims that the parties agreed to resolve by arbitration. ***Id.*** (citing cases). It cautioned, however, that these prior decisions did not mean that the FAA would not permit "the enforcement of agreements to arbitrate under different rules than those set forth in the Act itself. . . . Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." ***Id.*** at 479. For this reason, the Court concluded that California law was not preempted by the FAA, finding that enforcement of the contractual choice-of-law provision was "fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." ***Id.*** Thus, ***Volt*** did not address the question presented in this case, namely, whether a state court should apply federal law or state law to the issue of appealability. The principles relied on in ***Volt***, however, inform our analysis of that issue.

### *Procedural versus Substantive*

With the Court's analysis in ***Volt*** as background, we consider whether the state appellate court is to apply the appealability provision of the FAA or the TUAA. As seen below, resolution of this issue requires us to consider whether the appealability provisions are substantive or procedural, and whether the appealability provisions of the TUAA are preempted by the FAA.

Smythe urges this Court to find that, if the FAA applies to an arbitration agreement, it applies in all respects. Smythe cites numerous Tennessee cases applying the FAA, rather than the TUAA, to a contract that involves interstate commerce. For example, Smythe cites ***Warbington Constr., Inc. v. Franklin Landmark, L.L.C.***, 66 S.W.3d 853, 856 (Tenn. Ct. App. 2001); ***Dale Supply Co. v. York Int'l Corp.***, No. M2002-01408-COA-R3-CV, 2003

WL 22309461, at *3 (Tenn. Ct. App. Oct. 9, 2003); *Teachout v. Conseco Sec., Inc.*, No. M2003-00621-COA-R3-CV, 2004 WL 1877224, at *2 (Tenn. Ct. App. Aug. 20, 2004); *Spann v. Am. Express Travel Related Servs. Co.*, 224 S.W.3d 698, 709 (Tenn. Ct. App. 2006). Smythe urges this Court to find that it has subject matter jurisdiction over this appeal under the FAA, without regard to whether the statutory provisions at issue are "substantive" or "procedural," citing cases from other jurisdictions that have adopted this view.

In response, Morgan Keegan argues that we must differentiate between substantive and procedural statutory provisions, because the procedural parts of the FAA do not preempt the corresponding provisions of the TUAA, relying on the principles articulated by the Supreme Court in *Volt*, and citing cases from other jurisdictions to that effect. Morgan Keegan maintains that the Tennessee cases cited by Smythe are inapposite because all involve substantive provisions of the FAA, the TUAA, or both. To rebut, Smythe argues that Morgan Keegan's position is undermined by this Court's decision in *Spell v. LaBelle*, No. W2003-00821-COA-R3-CV, 2004 WL 892534 (Tenn. Ct. App. Apr. 22, 2004). It acknowledges a split of authority in cases from other jurisdictions, and argues that *Spell* shows that Tennessee courts apply all provisions of the FAA to a contract that involves interstate commerce, including the appealability provisions in Section 16.

We examine the implications of prior Tennessee caselaw, considering first the *Spell v. LaBelle* decision cited by Smythe. In *Spell*, the plaintiff and the defendant entered into a contract that included an arbitration clause. *Spell*, 2004 WL 892534, at *1. The arbitration clause specified that any arbitration would take place in Chicago, Illinois. The plaintiff sued the defendant in Tennessee state court for breach of the contract, and the defendant filed a motion to dismiss based on the arbitration clause. *Id.* The Tennessee trial court entered an order staying the litigation and compelling arbitration, but the trial court also, *sua sponte*, reformed the contract to require the arbitration to take place in Memphis, Tennessee, rather than Chicago, Illinois. *Id.* The defendant appealed to this Court, and the plaintiff argued that the Tennessee appellate court did not have subject matter jurisdiction to hear an appeal of an order compelling arbitration, citing Section 16 of the FAA. *Id.* at *2.

The appellate court in *Spell* first found that the contract at issue involved interstate commerce, and so was governed by the FAA. *Id.* It recognized that the primary purpose of the FAA is to make certain "that private agreements to arbitrate are enforced according to their terms." *Id.* at *3 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995)). The court noted that Section 16 of the FAA is a "provision governing appeals of orders concerning arbitration," and that it "endeavor[s] to promote appeals from orders barring arbitration and limit appeals from orders directing arbitration." *Id.* at *2 (quoting *Filanto, S.P.A. v. Chilewich Int'l Corp.*, 984 F.2d 58, 60 (2d Cir. 1993) (citation omitted)). The appellate court acknowledged that the trial court's order was, on its face, an order

compelling arbitration, not ordinarily appealable under Section 16. It concluded, however, that the effect of the trial court's order was to deny the parties their agreed-upon arbitration by dictating a new forum for the arbitration. Denying an appeal in this situation for lack of appellate jurisdiction, the court held, would thwart the purposes of Section 16 and of the FAA as a whole, and would "not ensure the 'speed, simplicity, and economy associated with arbitration.' " *Id.* at *3 (quoting DAVID D. SIEGEL, PRACTICE COMMENTARY: APPEALS FROM ARBITRABILITY DETERMINATIONS, 9 U.S.C. § 16, at 532 (West Supp. 1997)). For these reasons, the appellate court held that the trial court's order was appealable under the FAA, limiting its holding to "the unique situation where the trial court orders arbitration but, *sua sponte*, reforms the parties' choice of law and forum selection clauses." *Id.*

As noted by Smythe, the *Spell* Court applied the appealability provisions in Section 16 of the FAA to an appeal in a Tennessee court. However, *Spell* explicitly limited its holding to the "unique" factual situation presented in that case. There is no indication that the appellate court in *Spell* considered the issue of preemption, or whether the result would have been different under the TUAA. Indeed, there is not even a mention of the TUAA in *Spell*, or any indication that the result under the TUAA would be different. For these reasons, we find that the decision in *Spell* is not controlling on the issue before us. *See also Thompson v. Terminix Int'l Co.*, No. M2005-02708-COA-R3-CV, 2006 WL 2380598, *3 (Tenn. Ct. App. Aug. 16, 2006) (concluding that the order compelling arbitration and staying the action is not appealable under either the FAA or the TUAA).

The other Tennessee cases cited by Smythe involve provisions of the FAA that are clearly substantive, not procedural, and none involve inconsistencies between the procedural provisions of the FAA and the TUAA. *See Warbington Constr.*, 66 S.W.3d at 856 (applying 9 U.S.C. § 10(a) in determining whether an arbitration award should be vacated); *see also Spann*, 224 S.W.3d at 709-11; *Dale Supply Co.*, 2003 WL 22309461, at *3. Therefore, these Tennessee cases are not illuminating on the issue presented in this appeal. Consequently, we find no binding Tennessee caselaw on the issue of whether to apply the appealability provisions of the FAA or the TUAA in state court, in a situation in which the result would differ depending on which law applied.

Thus, we are faced with another issue of first impression. As we have stated above, when presented with an issue of first impression, particularly one that involves the interpretation of a uniform act, it is useful to review decisions in other states. *See Parrish*, 172 S.W.3d at 530. As note above, there appears to be a split of authority on the issue.

A minority of jurisdictions have held that, where interstate commerce is involved, the FAA governs all aspects of the case, even the appealability provisions of Section 16. *See Pre-Paid Legal Servs. Inc. v. Anderson*, 918 So. 2d 634, 634 (Miss. 2005); *Carpenter v. Brooks*, 534

S.E.2d 641, 645 (N.C. Ct. App. 2000); ***Dakota Wesleyan Univ. v. HPG Int'l, Inc.***, 560 N.W.2d 921, 922-23 (S.D. 1997). These cases applied the appealability provision of the FAA with no discussion of the corresponding state law. Notably, however, a Missouri court explicitly applied Section 16 of the FAA instead of the corresponding state law provision, reasoning that it could not apply a state substantive or procedural law that was "in derogation" of the FAA. ***VCW, Inc. v. Mut. Risk Mgmt. Ltd.***, 46 S.W.3d 118, 121-22 (Mo. Ct. App. 2001); *see Getz Recycling, Inc. v. Watts*, 71 S.W.3d 224, 228 n.1 (Mo. Ct. App. 2002) (following ***VCW***).

On the other hand, the majority of jurisdictions that have considered the issue have held that the state's law on appealability of an arbitration order is procedural, and that state procedural laws apply in state court unless they are preempted by the FAA — "that is, to the extent that [they] 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" ***Volt***, 489 U.S. at 477 (quoting ***Hines***, 312 U.S. at 67); *see **So. Cal. Edison Co. v. Peabody W. Coal Co.***, 977 P.2d 769, 774-75 (Ariz. 1999) (*en banc*, applying Arizona law on appealability, because the purposes of the FAA were not defeated thereby); ***Am. Gen. Fin. Servs. v. Vereen***, 639 S.E.2d 598, 601 (Ga. Ct. App. 2006) (applying Georgia law on appealability because it does not undermine the purposes and objectives of the FAA);[14] ***Saavedra v. Dealmaker Devs., LLC***, 8 So. 3d 758 (La. Ct. App. 2009) (finding that Louisiana law on appealability did not undermine the purposes of the FAA, stating that "state courts are . . . free to follow their own procedural rules regarding the timing of appeals unless those rules undermine the goals and principles of the FAA"); ***Wells v. Chevy Chase Bank, F.S.B.***, 768 A.2d 620, 629 (Md. Ct. App. 2001) (holding that Maryland law on appealability was not preempted because it does not undermine the goals of the FAA, noting that most courts reach this conclusion); ***Weston Sec. Corp. v. Aykanian***, 703 N.E.2d 1185, 1189 (Mass. Ct. App. 1998) (finding that FAA does not preempt Massachusetts law on appealability because it does not stand as an obstacle to the accomplishment and execution of the full purposes of Congress in the FAA); ***Kremer v. Rural Comty. Ins. Co.***, 788 N.W.2d 538, 545-46 (Neb. 2010) (finding the trial court order to be appealable under Nebraska law, because allowing the appeal did not undermine the FAA's goals and objectives); ***Batton v. Green***, 801 S.W.2d 923, 928 (Tex. Ct. App. 1990) (applying Texas law on appealability because those procedural rules were not "anti-arbitration"); *see also **Cronus Invs., Inc. v. Concierge Servs.***, 107 P.3d 217, 226 (Cal. 2005) (holding that California procedural rules applied because "the United States Supreme Court does not read the FAA's procedural provisions to apply to state court proceedings"); ***Atlantic Painting & Contracting Inc. v. Nashville Bridge Co.***, 670 S.W.2d 841, 846 (Ky. 1984) (holding that "[t]he procedural aspects [of the FAA] are confined to federal cases;" decided before the enactment of Section

---

[14]Although certiorari was granted in this case, our research reveals no subsequent history in these proceedings.

16); ***Xaphes v. Mowry***, 478 A.2d 299, 301 (Me. 1984) (determining that the question of appealability was a matter of state law; decided before the enactment of Section 16); ***Moscatiello v. Hilliard,*** 939 A.2d 325, 329 (Pa. 2007) (applying Pennsylvania 30-day time limit for review of arbitration awards, holding that "[t]he FAA does not preempt the procedural rules governing arbitration in state courts"). In addition, there is one Missouri case in accord with the majority view, decided after the ***VCW*** case. ***See Whitney v. Alltel Commc'ns, Inc.***, 173 S.W.3d 300, 306-07 (Mo. Ct. App. 2005) (applying Missouri law to the appealability issue, concluding that the court "may apply state procedural rules so long as they do not defeat any of the substantive rights granted by Congress in the [FAA]").

After careful review of all of these cases, we are persuaded that the analysis followed by the majority of courts is the correct analytical framework for this issue. Thus, we find that the TUAA provision regarding appealability is a procedural provision that is applicable to arbitration cases in state courts. This holding, distinguishing between the substantive and procedural provisions of the TUAA, is in line with the Supreme Court's analysis in ***Volt***. In the ***Volt*** decision, the Court indicated that Congress did not intend to preempt the entire field of arbitration, and that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."[15] ***Volt***, 489 U.S. at 477. Furthermore, in ***Volt*** and in other cases, the Court has specifically refrained from holding that Sections 3 and 4 of the FAA apply to proceedings in state courts.[16] ***Southland***, 465 U.S. at 16 n.10; ***Volt***, 489 U.S. at 477 n.6; ***see also Cronus***, 107 P.3d at 226 (relying on ***Southland*** and ***Volt*** in concluding that the procedural provisions of the FAA do not apply to state court proceedings). Consistent with ***Volt***, this Court has recognized in *dicta* that Section 16 of the FAA "establishes procedures for interlocutory appeals *of federal court orders*," and that the TUAA was intended to "provide procedures for the enforcement of arbitration agreements *in state court*." ***Hubert v. Turnberry Homes, LLC***, No. M2005-00955-COA-R3-CV, 2006 WL 2843449, at *3-4 (Tenn. Ct. App. Oct. 4, 2006) (emphasis added); ***see MBNA Am., N.A.***

---

[15]Although this Court's decision in ***Spell v. LaBelle*** did not cite the ***Volt*** case, the analysis in ***Spell*** is fully consistent with ***Volt***. Specifically, the ***Spell*** Court found that it had jurisdiction to hear the appeal so as to not frustrate the central purpose of the FAA, *i.e.*, "to ensure 'that private agreements to arbitrate are enforced according to their terms.' " ***Spell***, 2004 WL 892534, at *3 (quoting ***Mastrobuono v. Shearson Lehman Hutton, Inc.***, 514 U.S. 52, 53-54 (1995)).

[16]We are mindful that Sections 3 and 4 of the FAA contain language specifically indicating that those provisions apply only in federal district court, while Section 16 of the FAA does not contain such limiting language. ***See Cronus***, 107 P.3d at 224-25 (discussing the limiting language in Sections 3 and 4). Nevertheless, as we have discussed, the majority of courts that have addressed the issue have found that Section 16, as a "procedural" provision of the FAA, is not applicable in state court proceedings where the state arbitration statute contains its own appealability provision.

***v. Darocha***, No. E2006-02000-COA-R3-CV, 2007 WL 2323399, at \*3-4 (Tenn. Ct. App. Aug. 15, 2007) (relying on Section 29-5-313 of the TUAA as dictating the vacatur process, though the contract expressly called for the application of the FAA).

Considering all of these authorities, we adopt the majority view and hold specifically that Section 29-5-319 of the TUAA is procedural, and that it applies in Tennessee court proceedings unless preempted. This holding makes it necessary for us to consider whether the FAA preempts Section 29-5-319 of the TUAA.

### *Preemption*

Under ***Volt***, a state procedural law is preempted by the FAA only if the state statute "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" ***Volt***, 489 U.S. at 477 (quoting ***Hines***, 312 U.S. at 67). We look, then, to cases that tell us the purposes and objective of Congress in enacting the FAA. ***Volt*** described the purpose of the FAA as "'to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate,'" and "to place such agreements 'upon the same footing as other contracts.'"[17] ***Volt***, at 478 (quoting ***Dean Witter Reynolds***, 470 U.S. at 219-20; ***Scherk***, 417 U.S. at 511 (quoting H.R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)). As noted in ***Spell***, the United States Supreme Court has also stated that the FAA was enacted "to ensure 'that private agreements to arbitrate are enforced according to their terms.'" ***Mastrobuono***, 514 U.S. at 53-54, ***cited in Spell***, 2004 WL 892534, at \*3. "The broad purpose of section 16 [of the FAA] was to implement Congress' 'deliberate determination that appeal rules should reflect a strong policy favoring arbitration,' " and to "prevent parties from frustrating arbitration through lengthy preliminary appeals." ***Stedor Enters. Ltd. v. Armtex, Inc.***, 947 F.2d 727, 730-31 (4th Cir. 1991). Thus, Section 16 of the FAA "endeavor[s] to promote appeals from orders barring arbitration and limit appeals from orders directing arbitration." ***Spell***, 2004 WL 892543, at \*2-3 (citing ***Filanto, S.P.A.***, 984 F.2d at 60 (citation omitted)).

---

[17]English courts traditionally disfavored arbitration agreements and refused to enforce them. Early American courts adopted this hostility toward arbitration agreements, and the unwillingness to enforce arbitration agreements became firmly embedded into our common law. ***Scherk v. Alberto-Culver Co.***, 417 U.S. 506, 510-11 (1974). "The courts . . . felt that the precedent was too strongly fixed to be overturned without legislative enactment." ***Southland Corp.***, 465 U.S. at 13 (quoting H.R. Rep. No. 96, 67 Cong., 4th Sess. 6 (1923)). Consistent with this nationwide attitude, "Tennessee's judicial system has not always looked with favor on private arbitration even though arbitration has existed in various forms since the Roman era." ***Hubert v. Turnberry Homes, LLC***, No. M2005-00955-COA-R3-CV, 2006 WL 2843449, at \*4 (Tenn. Ct. App. Oct. 4, 2006). Thus, in 1983, the Tennessee legislature enacted the TUAA "to provide procedures for the enforcement of arbitration agreements in state court." ***Id.***

Smythe has not demonstrated that Section 29-5-319(a)(5) of the TUAA undermines the purposes of the FAA, or that it stands as an obstacle to the accomplishment of the objectives of the FAA, as the purposes and objectives are articulated above. We acknowledge that the TUAA does not permit appeal of an order vacating an arbitration award and requiring a rehearing, and thereby forces a second arbitration. This result, however, does not appear to obstruct the above-stated purpose of the FAA, that is, to reverse judicial hostility to arbitration agreements, and to mandate that all arbitration agreements involving interstate commerce be enforced as written.

Smythe notes that this Court in **Spell** also considered the overall purpose of arbitration, "to save the parties time, money and effort by substituting for the litigation process the advantages of speed, simplicity, and economy associated with arbitration." **Spell**, 2004 WL 892534, at *3 (quoting SIEGEL, PRACTICE COMMENTARY: APPEALS FROM ARBITRABILITY DETERMINATIONS, 9 U.S.C. § 16, at 352 (West Supp. 1997)). Smythe argues forcefully that requiring him to proceed to a second arbitration before determining the propriety of the trial court's vacatur does not ensure the speed, simplicity, and economy associated with arbitration.

We considered this argument at some length. Certainly, if the trial court's vacatur order is erroneous, Smythe will have been forced to endure unnecessarily the expense, delay, and emotional toll of a second large and complex arbitration proceeding. This is no small matter. However, despite any misgivings we may have about the trial court's order of vacatur,[18] we must consider the issue of preemption and this Court's appellate jurisdiction without regard to the merits of the appeal. While a straight application of TUAA Section 29-5-319 has the potential to hinder "speed, simplicity, and economy" where the underlying trial court decision turns out to be erroneous, it also ensures that the arbitration process will be carried out to finality before resort to the courts is permitted and minimizes the involvement of courts in the arbitration process.[19] **See Volt**, 489 U.S. at 477 ("There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."); **Stedor Enters.**, 947 F.2d at 728 (noting that the FAA reflects "a strong congressional policy against appeals which delay the onset of arbitration"); **Filanto**, 984 F.2d at 60 (Congress, in enacting Section 16, endeavored to promote appeals from orders barring arbitration and to limit

[18]We expressly do not address the merits of the issues raised in this appeal.

[19]This is in contrast to **Spell**, in which the trial court's *sua sponte* decision to reform the choice of law and forum selection clauses of the parties' arbitration agreement was inherently contrary to the central purpose of the FAA, to enforce private arbitration agreements according to their terms. **Spell**, 2004 WL 892534, at *3.

appeals from orders directing arbitration). Thus, Section 29-5-319 does not obstruct the objectives of "speed, simplicity, and economy associated with arbitration."

Accordingly, we find that Section 29-5-319 of the TUAA is not preempted by the FAA. Therefore, the TUAA applies to the issue of whether the trial court's order is appealable. Under Section 29-5-319 of the TUAA, this Court is without jurisdiction to hear Smythe's appeal.

## Rule 2 of the Tennessee Rules of Appellate Procedure

Finally, Smythe argues that, irrespective of our interpretation of Section 29-5-319(a) of the TUAA, this Court should find "good cause" pursuant to Rule 2 of the Tennessee Rules of Appellate Procedure to suspend the rules of finality and exercise jurisdiction over this appeal. Smythe cites cases in other jurisdictions in which the appellate court found that, despite a lack of statutory authority for an appeal of an order vacating an arbitration award and remanding for a rehearing, the appellate court should nevertheless exercise its discretion to assert jurisdiction over the appeal in the interest of justice and judicial economy. *See Metro. Airports Comm'n v. Metro. Airports Police Fed'n*, 443 N.W.2d 519, 523 (Minn. 1989) (holding that, although an order vacating the arbitration award and remanding the case for a rehearing is not appealable under the state's version of the uniform arbitration act, the appellate court exercised its "constitutionally independent appellate authority to review whatever case it deems necessary in the interests of justice"); *State v. Davidson & Jones Constr. Co.*, 323 S.E.2d 466, 469 (N.C. Ct. App. 1984) (holding that, even though the order vacating the arbitration award and granting a rehearing was not a final order, the appellate court nevertheless exercised its discretion to entertain the appeal under an appellate rule governing certiorari review).

The Court is cognizant of the difficulty to the parties of again arbitrating these long-standing disputes. However, this Court has held that our authority under Rule 2 to suspend the Rules of Appellate Procedure should be exercised very sparingly, only in extraordinary circumstances. We must conclude that the circumstances in this case do not warrant the exercise of our discretion to suspend the requirements of the Rules of Appellate Procedure, in direct contravention of the clear legislative intent behind Section 29-5-319(a)(5) of the TUAA.

### CONCLUSION

In sum, we conclude that, although the FAA applies to the substantive issues in this case, the TUAA governs the appealability of the trial court's order. Under the TUAA, Section 29-5-319(a)(3) does not authorize this appeal, because there was no motion to confirm, and the

trial court did not address confirmation of the arbitration award in its order. The applicable provision of the TUAA is Section 29-5-319(a)(5), which indicates that an order vacating an arbitration award *and* directing a rehearing is not appealable. We find that this provision of the TUAA is procedural and is not preempted by federal law. Finally, we decline to exercise our discretion under Rule 2 to suspend the Rules of Appellate Procedure or to otherwise seek to avoid the effect of the plain language of Section 29-5-319(a). Therefore, because an appeal from the trial court's decision in this cause is not authorized under Section 29-5-319(a) of the TUAA or any other authority, we must dismiss this appeal for lack of subject matter jurisdiction.

The appeal is dismissed for lack of subject matter jurisdiction. Costs on appeal are taxed to Appellants William Hamilton Smythe, III, Individually; William H. Smythe, IV, Trust U/A/DTD 12/29/87; William H. Smythe, III, Trustee; and Smythe Children's Trust #2 FBO Katherine S. Thinnes U/A/DTD 12/29/87, and their surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE